STATE of Wisconsin, Plaintiff-Respondent,

v.

Lew JENSEN,† Defendant-Appellant.

Court of Appeals

*No. 86–1915–CR. Submitted on briefs April 15, 1987.—Decided August 11, 1987.*

(Also reported in 415 N.W.2d 519.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For defendant-appellant there were briefs by *Glenn L. Cushing,* assistant state public defender of Madison.

For plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general, and *Sharon Ruhly,* assistant attorney general of Madison.

Before Cane, P.J., Myse and Dykman, JJ.

MYSE, J.   Lew Jensen appeals a judgment convicting him of sexual assault, contrary to sec. 940.225(1)(d), Stats., and an order denying his motion

for postconviction relief. Jensen argues that the trial court erroneously permitted a guidance counselor to testify as an expert and express an opinion that the complainant's behavior was consistent with that of a sexually abused child. He also argues that the trial court erred by submitting his written confession to the jury for their use during deliberations. We conclude that the court properly permitted the guidance counselor to testify as an expert and that the court's error in permitting him to express an opinion that connected the complainant's behavior with that of a sexually abused child was harmless. We also conclude that sending Jensen's written confession to the jury room was harmless error. The judgment and order are affirmed.

Lew Jensen was charged with sexually assaulting his eleven-year-old stepdaughter, L.J. At trial Thomas Bosman, L.J.'s school guidance counselor, testified that L.J.'s "acting out" behavior at school following the alleged sexual assault was consistent with that exhibited by a sexually abused child.

At trial, the state also introduced into evidence Jensen's written confession to the charged sexual assault. Jensen testified that the confession was untrue and that he had made it because he believed that only by doing so could he retain custody of L.J. The court sent Jensen's confession to the jury for their use during deliberations.

Jensen contends that the trial court erred by permitting Bosman to testify as an expert in the behavior exhibited by sexually abused children. We disagree.

■

A trial court has broad discretion in determining whether a witness has sufficient knowledge, skill,

experience, or training to qualify as an expert. *Hampton v. State,* 92 Wis. 2d 450, 455–56, 285 N.W.2d 868, 871–72 (1979); sec. 907.02, Stats. We will uphold the exercise of that discretion unless the circumstances demonstrate that the court's determination was manifestly wrong and constituted an abuse of discretion. *Id.*

The trial court could reasonably determine that Bosman was qualified as an expert in the behavior exhibited by sexually abused children. Bosman holds a master's degree in guidance and counseling and a bachelor's degree in elementary education. He has also earned fourteen credits beyond his master's degree and has undergone specialized training regarding sexual abuse of children. Bosman testified that he had been employed as a guidance counselor for fifteen years and that during the last four years he had been involved in investigating one to two suspected cases of sexual child abuse per year. Based upon Bosman's training and prior experience, the trial court did not abuse its discretion by permitting him to testify as an expert in the area of sexual child abuse. *See State v. Haseltine,* 120 Wis. 2d 92, 95 n. 5, 352 N.W.2d 673, 675 n. 5 (Ct. App. 1984).

Next, Jensen contends that the trial court erred by permitting Bosman to opine that L.J.'s behavior at school following the alleged sexual assault was consistent with that of a sexually abused child. The prosecutor asked Bosman: "[i]n your opinion ... are the kinds of acting out behavior that the teachers described to you that they were seeing in [L.J.] consistent with children who were victims of sexual abuse?" Bosman replied "Yes." Jensen claims that this testimony impermissibly bolstered L.J.'s credibility because it

implied that she was telling the truth about the alleged sexual assault. *See id.* at 97–98, 352 N.W.2d at 676; sec. 906.08, Stats. We conclude that the admission of this testimony was harmless error.

Determining whether an expert's opinion should be admitted into evidence is a matter resting within the trial court's discretion. *State v. Friedrich,* 135 Wis. 2d 1, 15, 398 N.W.2d 763, 769 (1987). A trial court abuses its discretion, however, when it misapplies the law. *State v. City of La Crosse,* 120 Wis. 2d 263, 268, 354 N.W.2d 738, 740 (Ct. App. 1984).

In *Haseltine,* 120 Wis. 2d at 96, 352 N.W.2d at 676, we concluded that an expert should not be permitted to testify that a complainant had been sexually assaulted based upon the victim's subsequent conduct because no expert "should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." An opinion that the complainant was sexually assaulted or is telling the truth is impermissible. *Id.* We also noted, however, that such testimony would be admissible if its purpose was to explain what otherwise would be ambiguous or contradictory conduct by a complainant:

> Depending on the case, the testimony of an expert might aid the jury. For example, an incest victim may not immediately report the incest, or may recant accusations of incest. Jurors might reasonably regard such behavior as an indication that the victim was not telling the truth. An expert could explain that such behavior is common among incest victims as a result of guilt, confusion, and a reluctance to accuse a parent.

*Id.* at 97, 352 N.W.2d at 676 (citation omitted). Under this exception, such testimony does not involve an expert's opinion that a sexual assault had occurred. Rather, such testimony is limited to explaining that certain conduct is the natural product of a victim's psychological condition.

Under *Haseltine,* an expert's opinion that a complainant has been sexually assaulted is inadmissible. A complainant's conduct may not be used to prove that an assault has occurred but an assault may be used to explain a complainant's later ambiguous or contradictory conduct.

The line drawn between the two considerations in *Haseltine* is not always readily perceived and, under the best of cases, the danger that the jury will regard a complainant's conduct as proof of an assault is always present. In order to minimize this danger and keep the *Haseltine* considerations clearly distinguished, we suggest that such opinion testimony be elicited in the form of a hypothetical question coupled with a cautionary instruction to the jury.[1] The instruction should warn the jury that the complainant's conduct may not be used as evidence that an assault has occurred and that if the hypothesis is infirm, the expert's opinion is equally infirm. *See* Wis J I—Criminal 205 (1987).

By using the hypothetical form coupled with a cautionary instruction, the danger that the jury will regard the expert's opinion as evidence that the complainant had been sexually assaulted will be

---

[1] An example of such a hypothetical question would be "assuming that 'X' had been sexually assaulted, do you have an opinion as to why she denied the assault when first questioned by 'Y'?"

reduced. Although there remains a potential danger that the jury will reason that the complainant's subsequent conduct proves the assault, a hypothetical question focusing on the complainant's conduct will not only lessen this danger but also reduce the possibility that the expert will inadvertently stray into the prohibited area.

As a foundation for admitting an expert's opinion on this issue, evidence must be introduced of an assault and the complainant's ambiguous or contradictory conduct. *See Novitzke v. State,* 92 Wis. 2d 302, 305–07, 284 N.W.2d 904, 906–07 (1979); *Schulz v. St. Mary's Hosp.,* 81 Wis. 2d 638, 648–49, 260 N.W.2d 783, 785–86 (1978). In cases where such an inquiry is appropriate, the expert's opinion must focus on the complainant's conduct. Both the court and counsel should take steps necessary to ensure that the expert's opinion is not used for an impermissible purpose.

Here, Bosman's testimony falls closely between the two considerations in *Haseltine.* Although Bosman opined that L.J.'s acting out was consistent with that exhibited by a sexually abused child, that opinion was directed at explaining L.J.'s unusual conduct in school following the alleged sexual assault. Nevertheless, under *Haseltine* an expert is precluded from testifying that a complainant's behavior following an alleged sexual assault was proof that an assault occurred. The question of whether the conduct was consistent with that of a sexual assault victim is but another way of attempting to reach the impermissible conclusion that the conduct proves the assault.

■
In essence, Bosman testified that L.J.'s behavior following the alleged sexual assault demonstrated that she had been sexually assaulted. This testimony

impermissibly bolstered L.J.'s credibility and her testimony that Jensen had assaulted her. Accordingly, the trial court erred by permitting Bosman to express an opinion on this issue. We conclude, however, that this error was harmless.

An error is harmless if there is no reasonable possibility that it contributed to the conviction. *State v. Grant*, 139 Wis. 2d 45, 52–53, 406 N.W.2d 744, 747–48, (1987). A reasonable possibility is that which undermines a court's confidence in the outcome of the case. *Id.* In making this determination, a court examines the error in the context of the entire trial. *Id.*

The outcome in this case was not undermined by Bosman's testimony that L.J.'s acting out behavior was consistent with that of a sexually abused child. The chief issue at trial was L.J.'s credibility in light of her testimony that Jensen had assaulted her. The emphasis of Bosman's testimony was to explain L.J.'s unusual conduct in school following the alleged sexual assault, not to prove that she had been sexually assaulted. Given the context in which this testimony was introduced, it is unlikely that the jury drew the impermissible conclusion that L.J.'s later conduct was proof that an assault had occurred.

More importantly, a review of the record discloses that Bosman's opinion on this issue constituted a very minor part of the prosecution's case. The prosecution introduced ample evidence of Jensen's guilt including his confession to the crime. Accordingly, there is no reasonable possibility that the error contributed to the conviction.

Jensen next asserts that the trial court erred by submitting his written confession to the jury for their use during deliberations. In *State v. Payne,* 199 Wis. 615, 629–30, 227 N.W. 258, 263 (1929), our supreme court concluded that it was improper to send a defendant's written statements into the jury room because of the danger that the statements would be over-emphasized relative to the testimony given from the witness stand. In light of *Payne,* we conclude that the trial court erred by sending Jensen's confession to the jury. We conclude, however, that this error was harmless.

The record demonstrates that the issue before the jury regarding Jensen's confession was not its contents but, rather, the circumstances under which it was given. Jensen testified that he made the confession because the police had told him that only by doing so would he be able to retain custody of L.J. The officers involved in taking Jensen's confession denied these allegations. Thus, the issue before the jury was not the substance of Jensen's confession but whether it was voluntary or resulted from improper police pressure.

If the jury believed that the confession resulted from police pressure, the substance of that confession would have been rejected. If, however, the jury believed that the confession was voluntarily made, the fact that the confession was before them during deliberations would have had little effect because they were entitled to know and consider the contents of that confession. During the course of the trial, the prosecutor and Jensen's counsel had both referred to incriminating portions of the confession. Under these circumstances, we are satisfied that there is no

reasonable possibility that the court's error contributed to Jensen's conviction.

Several other Wisconsin cases have also addressed this issue. *See State v. Rutchik,* 116 Wis. 2d 61, 78–79, 341 N.W.2d 639, 647–48 (1984); *Franklin v. State,* 74 Wis. 2d 717, 724–25, 247 N.W.2d 721, 725 (1977); *State v. Opanchar,* 197 Wis. 454, 457, 222 N.W. 245, 246 (1928); *State v. Jaworski,* 135 Wis. 2d 235, 241–42, 400 N.W.2d 29, 31–32 (Ct. App. 1986). These cases, as well as *Payne,* have consistently found such error to be harmless. *Rutchik,* 116 Wis. 2d at 79–80, 341 N.W.2d at 648; *Franklin,* 74 Wis. 2d at 724, 247 N.W.2d at 725; *Payne,* 199 Wis. at 630, 277 N.W. at 263; *Opanchar,* 197 Wis. 457, 222, N.W. at 246 (1928); *Jaworski,* 135 Wis. 2d at 241–42, 400 N.W.2d at 29. Because the focus of the controversy centered not on the substance of Jensen's confession but the circumstances under which it was given, our conclusion that the error was harmless is even more compelling.

Even when viewed cumulatively, the errors in admitting Bosman's opinion regarding L.J.'s behavior and sending Jensen's confession to the jury room were harmless. As noted, the focus of Bosman's testimony was not on L.J.'s credibility or whether she had been sexually assaulted. Rather, his testimony centered on explaining L.J.'s unusual conduct in school following the alleged sexual assault. Similarly, the issue before the jury regarding Jensen's confession was not its contents but whether it had been voluntarily made. Irrespective of these errors, the state introduced ample evidence of Jensen's guilt. Consequently, even when viewed together, we are confident that these errors did not mislead or unduly influence the jury. *See State v. Dyess,* 124 Wis. 2d 525, 541–43, 370 N.W.2d 222, 231–32 (1985).

*By the Court.*—Judgment and order affirmed.

CANE, P.J. (*concurring*). I concur with the majority decision, but I disagree with the majority's reasoning that the admission of Thomas Bosman's testimony was error. This issue has been raised in a variety of jurisdictions with contradictory results.[1]

A jury found Lew Jensen guilty of having sexual intercourse with his eleven-year-old stepdaughter. The state's primary witness was the stepdaughter who testified that while she was living with her grandmother and Jensen, he got into bed with her, touched her vagina, and had sexual intercourse with her.

---

[1]Kansas and Oregon have held that such evidence is admissible because it is relevant to the issues being litigated and would assist the jury in making its determination as to guilt or innocence. *See, e.g., State v. McQuillen,* 689 P.2d 822, 828 (Kan. 1984), *aff'd,* 721 P.2d 740 (1986); *State v. Middleton,* 657 P.2d 1215, 1221 (Or. 1983).

On the other hand, Minnesota and Missouri have held that similar psychiatric evidence is inadmissible because it has not reached a level of scientific reliability necessary to establish the foundation for its admissibility. *See, e.g., State v. Saldana,* 324 N.W.2d 227, 229 (Minn. 1982); *State v. Taylor,* 663 S.W.2d 235, 239 (Mo. 1984). These jurisdictions have expressed grave reservations as to whether a logical correlation exists between the complainant's subsequent behavior and the expert's opinion that the complainant had been subjected to a sexual attack. These jurisdictions have also concluded that the prejudice resulting from bolstering the credibility of a complainant's testimony with scientific dignity of a psychologist's or a psychiatrist's opinion outweighed the probative value of such evidence.

It should be noted however that none of these jurisdictions would permit direct psychiatric or other expert testimony that the complainant was testifying truthfully.

On the other hand, Jensen denied having any sexual contact with his stepdaughter. Jensen testified that his former wife had left him for another man and had taken the daughter to California with her. He then obtained a court order granting him custody of his stepdaughter and brought her back to Wisconsin. Jensen claims that the stepdaughter fabricated the sexual assault charge as part of a plan with her mother in order that she might return to California.

As a part of its case against Jensen, the state called Bosman, a guidance counselor at the stepdaughter's school. The stepdaughter had first related to Bosman her accusations of sexual abuse three days after the alleged assault had occurred. Over objection, Bosman testified that the child's acting out behavior subsequent to the alleged incident was consistent with children who were victims of child abuse. He did not directly express an opinion that she was telling the truth or that she was sexually assaulted.

It is evident that his testimony does bolster her credibility, but this should not be a basis to deny the testimony. Much testimony, including expert testimony, tends to show that another witness either is or is not telling the truth. This, by itself, should not render evidence inadmissible. When an expert's testimony, if believed, will help the jury understand the evidence or determine a disputed fact, it should be admissible at the trial court's discretion. Section 907.02, Stats. Nor is testimony otherwise admissible in the form of an opinion or inference objectionable because it embraces an ultimate issue to be decided by the trier of fact. Section 907.04, Stats.

Sexual abuse of a child is usually committed in a secluded place witnessed only by the victim and the assailant. Thus, the trial involves primarily the vic-

tim's word against the accused's. This presents a difficult question for the jury. The expert's testimony is relevant to aid the jury in determining whether sexual abuse occurred. It should not be inadmissible simply because it may corroborate or make more credible the victim's testimony.

The use of expert testimony for the limited purpose of showing that a child's actions were consistent with those of children who are victims of sexual abuse, where the accused denies any sexual contact, is not a dramatic departure from the normal use of expert testimony in trials. The trial court must first find that the witness is indeed an expert and is testifying on a subject that is proper for expert testimony. The court must also find that the offered testimony is relevant. Opposing counsel will then have the opportunity to discredit the testimony through cross-examination and show any possible bias. The jurors ultimately determine what weight should be given to the testimony. Here, the trial court considered these factors and reasonably exercised its discretion by admitting Bosman's testimony.