STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert L. SNIDER, Defendant-Appellant.†

Court of Appeals

*No. 02–1628–CR. Submitted on briefs March 10, 2003.—Decided July 24, 2003.*

2003 WI App 172

(Also reported in 668 N.W.2d 784.)

† Petition to review denied 10-1-03.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy J. Gaskell* of *Hanson & Gaskell*, Westby.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sandra L. Nowack*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Vergeront, P.J., Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Robert Snider appeals a judgment convicting him of first-degree sexual assault of a child. He also appeals an order denying postconviction relief. The issues are (1) whether WIS. STAT. § 908.08 (2001–02)[1] precludes a trial court from admitting a child-victim's videotaped statement under the residual hearsay exception; (2) whether Snider's counsel rendered ineffective assistance by not requesting an instruction on a mistake defense; and (3) whether Snider's counsel rendered ineffective assistance by eliciting testimony that a detective believed the victim and not Snider when interviewing them.

¶ 2. We conclude that WIS. STAT. § 908.08 does not preclude the admission of videotaped statements of children via other hearsay exceptions, and that the trial court did not erroneously exercise its discretion in admitting the videotaped statement in this case. We also conclude that neither trial counsel's decision to forgo a mistake defense nor her questioning of the detective constituted deficient performance. Accordingly, we affirm the appealed judgment and order.

## BACKGROUND

¶ 3. On the morning after the alleged assault, the victim told her school guidance counselor that she had been molested. The counselor called the Monroe County Department of Human Services and reported the alleged assault to a social worker. The social worker in turn contacted a police detective. The social worker

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

conducted an investigative interview with the victim while the detective videotaped the interview. During the interview, the victim recounted Snider's actions of the previous night in some detail. She said that he had lifted her from a couch where she was sleeping, placed her on the floor and lain behind her. According to the victim, Snider then moved his hand inside her underwear and touched her vagina and later pressed his unclothed penis against her buttocks.

¶ 4. The detective also interviewed Snider that same day. During the interview and when he testified at trial, Snider corroborated parts of the victim's account of what had happened the night before. For example, Snider said he had awakened lying next to the victim on the floor with his arm around the victim's waist but claimed that he initially thought it was the victim's mother next to whom he was lying. He denied that he had touched the girl's vaginal area, claiming that his hand went no lower than "the belly button area." Snider also testified that he was fully clothed at the time and had not had an erection.

¶ 5. The State did not plan to introduce the videotaped interview at trial, but the defense had procured a transcript of it and planned to use the transcript for cross-examination and impeachment purposes. The victim's trial testimony was significantly less detailed than the account she gave during the videotaped interview. Despite leading questions from the prosecution, the victim left out some of the alleged touching she had described during the taped interview. After the victim's trial testimony, the State requested the court to allow it to play the videotape for the jury under the residual

hearsay exception.[2] The defense objected, arguing that Wis. Stat. § 908.08 governs the admissibility of the videotaped interview and that the requirements of the statute had not been met.[3]

¶ 6. The trial court concluded that Wis. Stat. § 908.08(7) allows admission of the statement under the residual hearsay exception. After reviewing the videotape, the trial court admitted the videotaped interview under that exception. The trial court also noted there was no unfair surprise to the defendant in admitting the statement because the defense had a copy of the videotape and had prepared a transcript of the interview for its own use at trial.

¶ 7. The jury found Snider guilty of one count of first-degree sexual assault, and the court entered a judgment of conviction and imposed sentence.[4] Snider moved for postconviction relief, renewing his argument that the court should not have admitted the videotaped statement. He also claimed trial counsel was ineffective in failing to request a jury instruction for the defense of

---

[2] Wisconsin Stat. § 908.03(24) provides an exception to the rule against admitting hearsay for a "statement not specifically covered by any of the foregoing [hearsay] exceptions but having comparable circumstantial guarantees of trustworthiness."

[3] The provisions of Wis. Stat. § 908.08 relevant to this appeal are quoted below at ¶ 11 of this opinion.

[4] The State charged two counts of sexual contact in the information, but the jury found Snider guilty of only the vaginal touching. The State also charged Snider in a separate complaint with sexual assault and attempted sexual assault of a different child. The cases were consolidated for trial. The trial court dismissed one of the counts involving the other victim on a defense motion at the close of the State's case, and the jury found Snider not guilty of the remaining charge involving the other victim.

mistake and by improperly cross-examining the detective who investigated the case. Following a *Machner*[5] hearing, the court denied the motion and Snider appeals.

## ANALYSIS

¶ 8. Snider first claims error in the trial court's decision to admit the videotaped interview. Snider acknowledges that WIS. STAT. § 908.08 permits a court to admit videotaped statements of children but argues that the statute precludes their admission under other hearsay exceptions. Snider argues that because the legislature placed specific restrictions on the admission of videotaped statements of children, admitting them under other hearsay exceptions nullifies the legislative intent that they be admitted only as set forth in § 908.08. Snider notes that § 908.08(2) and (3) require, among other things, that ten days prior notice of the intent to use the tape be given and that the statement be made under oath or affirmation. The State does not dispute that these requirements were not met in this case.

¶ 9. The State contends, however, that the plain language of WIS. STAT. § 908.08(7) permits a court to admit a child's videotaped statement under any other hearsay exception that may apply to the statement. The State points out that, had the statement not been videotaped, the court would have been free to admit it under any hearsay exception.

¶ 10. Whether WIS. STAT. § 908.08 prohibits the admission of a child's videotaped statement that does

---

[5] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

not meet the requirements of § 908.08(2) and (3) requires us to interpret and apply § 908.08 to the facts before us, which presents a question of law that we decide de novo. *See State v. Dean,* 163 Wis. 2d 503, 510, 471 N.W.2d 310 (Ct. App. 1991). The goal in statutory interpretation is to determine the intent of the legislature. *State v. Setagord,* 211 Wis. 2d 397, 406, 565 N.W.2d 506 (1997). If the plain language of a statute unambiguously sets forth the legislative intent, we do not look beyond that language to ascertain the statute's meaning. *See id.*

¶ 11. We thus begin by examining the language of the statute:

(1) In any criminal trial or hearing, juvenile fact-finding hearing under s. 48.31 or 938.31 or revocation hearing under . . . s. 304.06(3) or 973.10(2), the court or hearing examiner may admit into evidence the video-taped oral statement of a child who is available to testify, as provided in this section.

(2) (a) Not less than 10 days prior to the trial or hearing, or such later time as the court or hearing examiner permits upon cause shown, the party offering the statement shall file with the court or hearing officer an offer of proof showing the caption of the case, the name and present age of the child who has given the statement, the date, time and place of the statement and the name and business address of the videotape camera operator. That party shall give notice of the offer of proof to all other parties, including notice of reasonable opportunity for them to view the videotape prior to the hearing under par. (b).

(b) Prior to the trial or hearing in which the statement is offered and upon notice to all parties, the court or hearing examiner shall conduct a hearing on the statement's admissibility. At or prior to the hearing, the court shall view the videotape. At the hearing, the

840

court or hearing examiner shall rule on objections to the statement's admissibility in whole or in part. If the trial is to be tried by a jury, the court shall enter an order for editing as provided in s. 885.44(12).

**(3)** The court or hearing examiner shall admit the videotape statement upon finding all of the following:

(a) That the trial or hearing in which the videotape statement is offered will commence:

1. Before the child's 12th birthday; or

2. Before the child's 16th birthday and the interests of justice warrant its admission under sub. (4).

(b) That the videotape is accurate and free from excision, alteration and visual or audio distortion.

(c) That the child's statement was made upon oath or affirmation or, if the child's developmental level is inappropriate for the administration of an oath or affirmation in the usual form, upon the child's understanding that false statements are punishable and of the importance of telling the truth.

(d) That the time, content and circumstances of the statement provide indicia of its trustworthiness.

(e) That admission of the statement will not unfairly surprise any party or deprive any party of a fair opportunity to meet allegations made in the statement.

. . . .

**(7)** At a trial or hearing under sub. (1), a court or a hearing examiner may also admit into evidence a videotape oral statement of a child that is hearsay and is admissible under this chapter as an exception to the hearsay rule.

WIS. STAT. § 908.08.

841

¶ 12. We agree with the State that the plain language of Wis. Stat. § 908.08(7) permits the admission of a child's videotaped statement under any applicable hearsay exception regardless of whether the requirements of subsections (2) and (3) have been met. Section 908.08(1) permits the admission of a "videotaped oral statement of a child who is available to testify, *as provided in this section.*" (Emphasis added.) The remaining subsections of the statute provide two ways for the statement to be admitted "as provided in this section." The first is by meeting the various requirements set forth in subsections (2) and (3). If these requirements are met, the court "shall admit the videotape statement," § 908.08(3), and it need not consider any other grounds for admitting the statement. Alternatively, a court "may *also* admit into evidence a videotape oral statement of a child that is hearsay and is admissible under this chapter as an exception the hearsay rule." Section 908.08(7) (emphasis added). This language can only be read to mean that, if a child's videotape statement is admissible under one of the hearsay exceptions set forth in Wis. Stat. § 908.03, the requirements listed in the preceding subsections of § 908.08 are inapplicable.

¶ 13. The legislature's purpose in enacting Wis. Stat. § 908.08 was to make it easier, not harder, to employ videotaped statements of children in criminal trials and related hearings.[6] Without § 908.08, a child's videotape statement, like any other out-of-court state-

---

[6] *See* 1985 Wis. Act 262, § 1 ("This act is intended to allow children to testify in criminal, juvenile and probation and parole

ment offered for its truth, would have to come within an exception to the hearsay rule to be admitted into evidence at a criminal trial. By enacting the alternative procedure set forth in § 908.08(2) and (3) for admitting videotaped statements of children, the legislature has provided a way for these statements to be admitted even when no other hearsay exception applies, and even if the statement is produced in preparation for trial as an express means of avoiding having a child give direct testimony at trial. (See footnote 6.)

¶ 14. Snider, however, points to our comment in *State v. Williquette*, 180 Wis. 2d 589, 603, 510 N.W.2d 708 (Ct. App. 1993), *aff'd*, 190 Wis. 2d 677, 526 N.W.2d 144 (1995), that the purpose of WIS. STAT. § 908.08 is "to permit the evidentiary use of videotapes of children if a variety of safeguards are followed." *Id.* at 603. We concluded in *Williquette* that the trial court had not erred by failing to exclude sua sponte a child's video-taped statement proffered by the defense when the State did not object to its admission. *Id.* at 603–04. We observed, however, that had the State attempted to introduce the videotape and the defense objected under § 908.08, "the tape probably would not have been shown to the jury." *Id.* at 603.

¶ 15. Snider argues that the present facts are the same as the hypothetical we posed in *Williquette*, and that we must therefore similarly conclude that because the "safeguards" of WIS. STAT. § 908.08 were not met, the trial court should not have admitted the videotaped statement. We disagree. First, we did not consider in *Williquette* whether the videotape could have been admitted under one or more of the hearsay exceptions

revocation proceedings in a way which minimizes the mental and emotional strain of their participation in those proceedings . . . .").

843

set forth in WIS. STAT. § 908.03. That question was simply not before us. Moreover, our qualified comment that the tape in *Williquette* "probably would not have been" admitted over a defense objection was many steps removed from our actual holding in the case. Finally, our present conclusion that a child's videotaped statement is admissible if it comes within a hearsay exception is fully consistent with the requirement for "safeguards" noted in *Williquette*. As we have explained, § 908.08 recognizes two ways for a court to ensure that a videotaped statement is sufficiently trustworthy to be admitted into evidence: by requiring the proponent of the statement to comply with § 908.08(2) and (3), or by requiring the proponent to show that the statement comes within a hearsay exception.

¶ 16. In summary, we conclude that WIS. STAT. § 908.08(7) permits a trial court to admit a child's videotaped statement under a hearsay exception without requiring compliance with § 908.08(2) and (3). We next briefly consider whether the trial court properly did so in this case. Our consideration is brief because Snider does not argue on appeal that the court erroneously exercised its discretion in admitting the taped statement under WIS. STAT.§ 908.03(24), the "residual" hearsay exception.[7] We will not disturb a trial court's discretionary ruling if the trial court applied accepted legal standards to the facts of record and we can discern a reasonable basis for its ruling. *See State v. Huntington*, 216 Wis. 2d 671, 680–81, 575 N.W.2d 268 (1998). We conclude the trial court did not erroneously exercise its discretion in determining that the statement possessed

---

[7] In its response brief, the State noted the absence of such an argument and Snider filed no reply brief.

"circumstantial guarantees of trustworthiness" comparable to those of the enumerated hearsay exceptions. *See* § 908.03(24) (quoted at footnote 2).[8]

■

¶ 17. After reviewing the videotape, the trial court considered the factors enumerated in *State v. Sorenson*, 143 Wis. 2d 226, 245–46, 421 N.W.2d 77 (1988), and *Huntington*, 216 Wis. 2d at 687–88. These· factors include the child's age, ability to communicate and familial relationship with the defendant; the person to whom the statement was made and that person's relationship to the child; the circumstances under which the statement was made, including the time elapsed since the alleged assault; the content of the statement itself, including any signs of deceit or falsity; and the existence of other corroborating evidence. *Sorenson*, 143 Wis. 2d at 245–46. The factors are not intended to be "exclusive areas of inquiry," and each case should be examined in light of its particular circumstances. *Id.* at 244–45.

¶ 18. In applying the *Sorenson* factors to the videotaped statement, the trial court noted that the victim was ten years old at the time the statement was made and that her statements did not appear to be the product of adult manipulation because she demonstrated knowledge appropriate to her age and did not

---

[8] The trial court noted that the statement, made less than twenty-four hours after the assault, might also be admissible under the "excited utterance" exception. *See* WIS. STAT. § 908.03(2). However, because the State did not attempt to admit the statement as an excited utterance, the trial court evaluated the videotaped statement only under § 908.03(24). Similarly, because the State does not attempt in this appeal to justify the admission of the taped statement as an excited utterance, we do not address that possibility in this opinion.

want to talk about certain areas of the male or female body. The court also noted the victim thought of Snider as an uncle and was concerned about whether he would see the video. Finally, the trial court concluded there were no signs of deceit or falsity on the video, and that the videotaped statement was consistent with the statement the victim had made to the guidance counselor five hours earlier, and in many details, with the statement subsequently given to the detective by Snider himself.

¶ 19. We conclude the trial court applied the correct legal standard to the facts of record and articulated a reasonable basis for its decision to admit the statement under the residual hearsay exception. *See Huntington*, 216 Wis. 2d at 680–81. Accordingly, we conclude the trial court did not erroneously exercise its discretion in admitting the videotape.

■

¶ 20. Snider next claims he was deprived of his Sixth Amendment right to the effective assistance of counsel. To sustain an ineffective assistance of counsel claim, a defendant must show that his trial counsel's performance was deficient and that this performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact. *See State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985). We will not reverse the trial court's factual findings regarding counsel's actions unless they are clearly erroneous. *See id.* at 634. Whether counsel's performance was deficient and whether it prejudiced the defendant are questions of law we decide de novo. *See id.* In evaluating Snider's claim, this court can choose to address either the "deficient performance" or the "prejudice" component

first. *Strickland*, 466 U.S. at 697. If Snider's claim fails on either component, we need not address the other. *See id.*

¶ 21. Snider cites two deficiencies in his counsel's performance: counsel's failure to request an instruction on the defense of mistake, and her elicitation of allegedly prejudicial testimony from a police witness. To show deficient performance, Snider must identify acts or omissions of his trial counsel that were not the result of reasonable professional judgment. *See id.* at 690. Because Snider's right under the Sixth Amendment is to a competent lawyer, not to the best lawyer, he must show that counsel's acts or omissions were outside the broad range of professionally competent assistance. *See id.* To succeed on his claim, Snider must overcome the strong presumption that his trial counsel employed reasonable professional judgment in making all significant decisions. *See id.*

¶ 22. Generally, trial strategy decisions reasonably based in law and fact do not constitute ineffective assistance of counsel. *See State v. Hubanks*, 173 Wis. 2d 1, 28, 496 N.W.2d 96 (Ct. App. 1992). Defense counsel may select a particular defense from available alternative defenses and is not required to present the jury with alternatives inconsistent with the chosen defense. *Id.* Even if, in hindsight, selecting a particular defense appears to have been unwise, counsel's decision does not constitute deficient performance if it was reasonably founded on the facts and law under the circumstances existing at the time the decision was made. *See id.*

¶ 23. Snider notes that he consistently claimed before and at trial that he initially believed he was

847

touching the victim's adult mother, and he thus contends counsel should have requested a mistake instruction.[9] Trial counsel testified at the *Machner* hearing that the defense's theory of the case was that Snider "had not touched the girl . . . on the pubic mound." Counsel testified that she remembered, albeit "vaguely," that she had discussed a mistake defense with her co-counsel, but concluded it would conflict with the defense that Snider never touched the victim in a prohibited place. Specifically, counsel reasoned that there would be inconsistency and "possible confusion for the jury of pursuing both the defense of he never touched her in the pubic mound area. And also, if he did touch her, it was a mistake." She explained that, in her view, "it didn't happen and it was a mistake are two different defenses. We chose one."

¶ 24. We conclude trial counsel's performance was not deficient for not requesting an instruction on the defense of mistake. Counsel's explanation that she did not want to risk confusing the jury by arguing that her client did not touch the victim's pubic area, but if he did, it was because he thought it was the victim's mother, is both plausible and reasonable. Not only was there a risk of confusing the jury but a risk that the jury would find Snider's alternative exculpatory claims incredible. It was therefore an objectively reasonable strategy for trial counsel to choose not to pursue conflicting de-

---

[9] Mistake is a defense to a crime if it negates the state of mind necessary for the crime. *See* Wis. Stat. § 939.43. To be guilty of sexual contact with the victim, Snider must have intentionally touched her. *See* Wis. Stat. § 948.01(5)(a). Snider contends that if the jury believed he thought he was touching the victim's adult mother, it would not have found that he intended to touch the victim.

fenses. *See Hubanks*, 173 Wis. 2d at 28. The decision was a reasonable one based on the facts and circumstances existing at the time of trial and did not fall outside the broad range of professional norms. *See Strickland*, 466 U.S. at 697.

¶ 25. Snider also claims counsel performed deficiently when she repeatedly elicited testimony from the investigating detective that the detective believed the victim's statement and did not believe Snider's version of what had occurred. Snider claims trial counsel's action violated the general rule that witnesses cannot testify regarding whether another witness's testimony is truthful. *See State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (Ct. App. 1984). Snider contends that by repeatedly asking the detective whether he believed Snider or the victim, knowing the detective would testify that he believed the victim, trial counsel violated the *Haseltine* rule and, in the process, damaged Snider's credibility.

¶ 26. At the *Machner* hearing, trial counsel testified that when questioning the detective she was attempting to undermine his credibility by showing he was biased against Snider from the very start of the investigation. Trial counsel testified that her purpose "was to try to show that the detective from the beginning was not open to what Mr. Snider had to say and came into his interview of Mr. Snider with a bias." Counsel explained (and the trial transcript bears out) that counsel's goal was to convince the jury that, when he questioned Snider, the detective was trying to "sell" Snider the victim's story rather than to ascertain Snider's version of what happened.

¶ 27. The State maintains that trial counsel's performance was not deficient because (1) the detective's

testimony did not violate the *Haseltine* rule, and (2) eliciting the cited testimony was a reasonable trial strategy. We agree on both counts. *Haseltine* prohibits a witness from testifying that another witness is telling the truth at trial. *Id.* at 96. The *Haseltine* rule is intended to prevent witnesses from interfering with the jury's role as the " 'lie detector in the courtroom.' " *Id.* (citation omitted). We concluded in *State v. Smith*, 170 Wis. 2d 701, 718–19, 490 N.W.2d 40 (Ct. App. 1992), that there was no *Haseltine* violation when a detective testified that he thought the defendant " 'knew a lot more than he was telling me.' " The detective in *Smith* also testified that he did not believe the defendant's story so "he continued the interrogation until he got what he believed to be the truth." *Id.* at 718–19. Here, the detective similarly testified to what he believed at the time he was conducting the investigation, not whether Snider or the victim was telling the truth at trial. The detective, in response to questions on cross-examination, recounted how he conducted the interrogation and his thought processes at that time. As in *Smith*, his testimony did not violate the *Haseltine* rule.

¶ 28. We also conclude that trial counsel's questioning of the detective did not fall outside the range of professional norms. It permitted counsel to argue in closing that "[t]hey listened to one side of the story, and they tried to fit the evidence into that. And when Mr. Snider denied that he had done anything like touch [the victim] or her vaginal area or touch in her butt with his penis, the detective didn't believe him and kept trying to sell to him a story that it had happened." Counsel's attempt to discredit the investigating detective by showing that he came to a premature conclusion regarding what had occurred, and thereafter pursued a

one-sided investigation, was a reasonable trial tactic and did not constitute deficient performance.

¶ 29. Because Snider has not demonstrated that his trial counsel performed deficiently, we do not address whether he suffered prejudice on account of counsel's cited actions or omissions. *See Strickland*, 466 U.S. at 697.[10]

## CONCLUSION

¶ 30. For the reasons discussed above, we affirm the judgment of conviction and order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.

■■■■■■

[10] Even though we do not address the prejudice component, we note that counsel's decision to forgo a mistake defense in favor of Snider's denial of the allegations, and her effort to undermine the reliability of the State's investigation, were at least partially successful strategies in that the jury acquitted Snider on two of the three counts it was asked to decide.