STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth A. DAVIS, Defendant-Appellant.†

Court of Appeals

*No. 95–0456–CR. Submitted on briefs November 3, 1995.—Decided January 31, 1996.*

(Also reported in 545 N.W.2d 244.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J.   Kenneth A. Davis appeals from a judgment convicting him of threats to injure while armed, contrary to §§ 943.30(1) and 939.63(1)(a), STATS., and from an order denying him postconviction relief. On appeal, Davis contends that: (1) his constitutional right to be free from unreasonable searches was violated when the prosecution elicited testimony from a police officer that Davis refused to consent to a chemical test for intoxication, and (2) that a police officer impermissibly testified as to the credibility of two prosecution witnesses. Because we conclude that the first issue is waived by Davis' failure to object at trial and that the officer's statement related to the witnesses' demeanors and not their credibility, we affirm.

This case arose out of an incident that occurred at the home of Shana Craft, Davis' cousin. Davis had agreed to stay with Craft's nine children while she

traveled to Chicago to pick up a car. A snowstorm interfered with Craft's return; she arrived home in the evening approximately twenty-seven hours after her departure. When Craft returned, she told Davis that she would be unable to pay him for his baby sitting services.

Davis remained at Craft's along with John Thomas, a friend of Craft's, who had come to the house that afternoon while Davis was baby sitting. Throughout the evening, Davis made repeated requests to be paid. When Craft continued to refuse, Davis began to verbally threaten both Craft and Thomas.

Craft and Thomas decided to go upstairs, hoping that Davis would "cool off." A few minutes later Davis followed them, entered Craft's bedroom and threatened them with two knives he had taken from the kitchen. After Davis went back downstairs, Craft and Thomas followed. However, before rejoining Davis, Thomas suggested that Craft call the police.[1] In order to leave without incident, Craft told Davis that she was going to call her sister and ask her to bring the money Craft owed Davis.

While Craft was gone, Davis and Thomas continued to argue. Davis threatened Thomas with a knife, and during a struggle, Thomas received two small puncture wounds on his arm and a minor wound to his neck. When police arrived in response to Craft's call, Davis was arrested. After a jury found Davis guilty, he filed a motion for postconviction relief.[2] When that motion was denied, this appeal followed.

---

[1] Craft did not have a telephone in her home.

[2] Davis was charged with seven separate offenses arising from the incident at Craft's home. He was acquitted on five of the charges, and the jury was unable to reach a verdict on a charge of disorderly conduct.

Davis contends that eliciting testimony from a police officer that he refused to submit to a chemical test for intoxication violated his constitutional right to be free from unreasonable searches. When Davis raised this issue in his motion for postconviction relief, the trial court ruled that it was relevant to comment on a defendant's failure to submit to a lawful search. Furthermore, even if the search were deemed unlawful, Davis had waived his right of review by failing to raise a contemporaneous objection to the testimony.[3]

Davis now renews his claim of error, arguing his right to review is upheld by *Odell v. State,* 90 Wis. 2d 149, 279 N.W.2d 706 (1979) (per curiam). There, the court determined that appellate review of a fundamental constitutional error was warranted even though there had not been a contemporaneous objection. *Id.* at 155, 279 N.W.2d at 709.

Subsequent cases, however, have refined the holding of *Odell.* In *State v. Boshcka,* 178 Wis. 2d 628, 642, 496 N.W.2d 627, 632 (Ct. App. 1992), this court stated, "[U]nobjected-to errors are generally considered waived; and the rule applies to both evidentiary and constitutional errors." This holding is in line with the well-settled rule that "[f]ailure to object to an error at trial generally precludes a defendant from raising the issue on appeal." *State v. Edelburg,* 129 Wis. 2d 394, 400, 384 N.W.2d 724, 727 (Ct. App. 1986).

---

[3] The prosecution elicited the following testimony:

Q. Did you ask the defendant to submit to a chemical test of his breath?
A. Yes.
Q. Did he agree to that?
A. He refused.

We find well-defined support for this rule in *Wainwright v. Sykes*, 433 U.S. 72 (1977). There, the Court recognized the desirability of applying the contemporaneous objection rule to constitutional errors. The Court reasoned:

> A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest.... It enables the judge who observed the demeanor of those witnesses to make the factual determinations necessary for properly deciding the federal constitutional question.

*Id.* at 88. In addition, a contemporaneous objection may lead to the exclusion of evidence and thereby contribute to finality in criminal litigation. *Id.* For example, the exclusion of the objected-to evidence may lead to the acquittal of the defendant; if the defendant is subsequently convicted without the objected-to evidence, there will be one less constitutional claim to assert postconviction. *Id.* at 88-89.

Finally, and perhaps most importantly, enforcement of the rule encourages the parties to view the trial as an event of significance that should be kept as error-free as possible. *Id.* at 90. As the Court noted:

> The failure ... to require compliance with a contemporaneous-objection rule tends to detract from the perception of the trial . . . as a decisive and portentous event. . . . Society's resources have been concentrated at that time and place in order to decide ... the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable ....

518

*Id.* We conclude that the policy reasons offered by the Supreme Court in *Wainwright* are sound, leading us to adopt the contemporaneous objection rule outlined therein.

In doing so, we repeat well-settled law that waiver is in the interest of proper judicial administration, as witnessed by our above discussion. *See Wirth v. Ehly,* 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). We may, in our discretion, choose to address an issue despite waiver if it is in the interests of justice that we do so. *See State v. Dyess,* 124 Wis. 2d 525, 536, 370 N.W.2d 222, 228 (1985). Here, we see no necessity for abandoning the policy reasons behind the contemporaneous objection rule. Davis has not presented us with sufficient reasons to convince us that the integrity of the jury's verdict is clouded. We uphold the use of the contemporaneous objection rule here and apply it.

Davis next argues that a police officer witness improperly commented on the credibility of two prosecution witnesses, and that this court should grant a new trial in the interests of justice. *See* § 752.35, STATS.; *see also Lorenz v. Wolff,* 45 Wis. 2d 407, 414-15, 173 N.W.2d 129, 132 (1970). This is a question of law; an appellate court must decide questions of law independently of the trial court. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

A police officer witness was asked to describe the demeanors of Craft and Thomas. The officer responded:

> Very cooperative. They were not intoxicated from what I could tell. Gave very good statements and I found them to be excellent witnesses.

Davis did not object. He maintains that "defense counsel could not have reasonably anticipated that a question concerning the demeanor of Mr. Thomas and Ms. Craft would elicit an opinion assessing the quality of these two witnesses and their statements." He now contends that this court should grant a new trial because the officer's statement put before the jury "evidence not properly admitted." *See* § 752.35, STATS.

Davis further argues that the officer's statement improperly bolstered the credibility of Craft and Thomas and is prohibited by the holdings of *State v. Haseltine,* 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), and *State v. Romero,* 147 Wis. 2d 264, 432 N.W.2d 899 (1988). We disagree.

In *Haseltine,* a new trial was ordered because a psychiatrist, testifying as an expert witness, stated that in his opinion there was no doubt that Haseltine's daughter was an incest victim. *Haseltine,* 120 Wis. 2d at 95-96, 352 N.W.2d at 675-76. The court reasoned that such a statement in this context was an opinion that the daughter was telling the truth. *Id.* at 96, 352 N.W.2d at 676. The court further noted:

> Haseltine's entire defense consisted of witnesses who testified that the daughter was dishonest. Under these circumstances, the psychiatrist's opinion, with its aura of scientific reliability, creates too great a possibility that the jury abdicated its fact-finding role to the psychiatrist and did not independently decide Haseltine's guilt.

*Id.* Similarly, in *Romero* the sole issue in the case was whether the complainant or the defendant was telling the truth. *Romero,* 147 Wis. 2d at 279, 432 N.W.2d at 905. The supreme court noted that it was "a one-on-one battle of credibility." *Id.*

We conclude that the officer's statement that Thomas and Craft gave very good statements and were "excellent witnesses" was not a comment on their credibility, but rather related to their demeanors. The officer's comments merely summarized his opinion of the witnesses and did not unfairly taint the fact-finding process. The credibility of a witness is something a lay juror can knowledgeably determine. *Haseltine*, 120 Wis. 2d at 96, 352 N.W.2d at 676. We find nothing in the record to suggest that the officer's comment would have caused the jury to abdicate its fact-finding role.

*By the Court.*—Judgment and order affirmed.